1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   IGNACIO CAMPOS, RAQUEL                 No.  2:13-cv-494-MCE-EFB PS
     CAMPOS,
12
               Plaintiffs,
13                                          FINDINGS AND RECOMMENDATIONS

14        v.

15   FEDERAL HOME LOAN SERVICES
     CORP.; QUALITY HOME LOAN
16   SERVICES; AND DOES 1-100, inclusive,

17             Defendants.

18

19        This is an action by plaintiffs, proceeding in pro se, challenging the foreclosure of a trust

20   deed as to certain real property.[1]  Defendants Federal Home Loan Services ("Freddie Mac") and

21   Quality Loan Services Corporation ("Quality"), erroneously sued as Quality Home Loan

22   Services, move to dismiss the first amended complaint pursuant to Federal Rules of Civil

23   Procedure 12(b)(6).  ECF Nos. 36, 42.  For the reasons explained below, defendants' motions

24   must be granted.[2]

25   _____

26        [1]  This case is before the undersigned pursuant to Eastern District of California Local Rule
     302(c)(21).  *See* 28 U.S.C. § 636(b)(1).

27
          [2]  The court determined that oral argument would not be of material assistance and
28   therefore vacated the hearing on the motions to dismiss.  *See* E.D. Cal. L.R. 230(g).

                                                1

1    I.      Factual Allegations

2            The first amended complaint alleges that on or about December 14, 1993, Donald M.

3    Riedel borrowed $85,000 under a promissory note and executed a deed of trust in favor of

4    America's Wholesale Lender to secure the loan against property located at 106 H Street, Lincoln,

5    California (the "subject property").  First Am. Compl., ECF No. 33 at ¶¶ 7, 11.  On October 13,

6    2000, Donald Riedel transferred his interest in the property by way of what is referred to as an

7    "Interspousal Transfer Grant Deed" to Ms. Sofia Campos-Riedel ("Ms. Campos-Riedel").  *Id.* at

8    ¶ 12.  On January 16, 2001, plaintiffs executed a Deed of Trust between plaintiffs and Ms.

9    Campos-Riedel.  *Id.* at ¶ 14.  The Deed of Trust was recorded in the Placer County Recorder's

10   Office as Instrument No. 2001-0004547.  *Id.*

11           On December 11, 2008, defendant Quality, acting on behalf of defendant Freddie Mac,

12   recorded a Notice of Default and Election to Sell under Deed of Trust in the Placer County

13   Recorder's Office.  *Id.* at ¶ 15.  On March 13, 2009, Quality recorded a second Notice of

14   Trustee's Sale with the Placer County Recorder's Officer.  *Id.* at ¶ 17.  On April 5, 2010, Quality

15   recorded a Notice of trustee's Sale, which noticed the sale date for April 28, 2010.  *Id.* at ¶ 19.

16   On January 11, 2011, Quality recorded a third Notice of Trustee's Sale, this time noticing the sale

17   date for February 22, 2011.  *Id.* at ¶ 20.  Plaintiffs allege that on January 19, 2012, at the direction

18   of Freddie Mac, Quality held an unnoticed Trustee Sale.  *Id.* at ¶ 21.

19           At the January 19 Trustee Sale, Freddie Mac acquired the subject property through a

20   credit bid at a price far below market value.  *Id.* at ¶ 22.  On January 30, 2012, a Trustee's Deed

21   Upon Sale ("Trustee's Deed") was recorded with the Placer County Recorder's Office.  *Id*. ¶ 23.

22   Plaintiffs allege that at the time of the sale they had a $50,000 recorded lien against the property

23   and that they therefore were entitled to receive notice by certified mail of the January 19, 2012

24   Trustee Sale pursuant to California Civil Code §§ 2924b(c)(1) and 2924b(c)(2).  *Id.* at ¶ 25.

25   Plaintiffs allege that no notice was received or given by Quality which prevented plaintiffs from

26   protecting their interest in the property.  *Id.* at ¶¶ 26, 27.

27   /////

28   /////

1    Plaintiffs' first amended complaint ("FAC") alleges the following claims for relief: (1)

2    failure to provide adequate notice of sale; (2) negligence; (3) intentional interference with

3    contractual relations, (4) intentional interference with prospective economic advantage, (5)

4    unlawful business practices, and (6) financial elder abuse.  Defendants now move to dismiss the

5    first amended complaint pursuant to Rule 12(b)(6) for failure to state a claim.

6    II.    Motions to Dismiss

7          A.    Standard

8          To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

9    must contain more than a "formulaic recitation of the elements of a cause of action"; it must

10   contain factual allegations sufficient to "raise a right to relief above the speculative level."  *Bell*

11   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more

12   . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

13   action."  *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-

14   236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to

15   'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

16   (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff

17   pleads factual content that allows the court to draw the reasonable inference that the defendant is

18   liable for the misconduct alleged."  *Id*.  Dismissal is appropriate based either on the lack of

19   cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal

20   theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

21         In considering a motion to dismiss, the court must accept as true the allegations of the

22   complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe

23   the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in

24   the pleader's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

25         The court is mindful of the plaintiffs' pro se status.  Pro se pleadings are held to a less

26   stringent standard than those drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

27   Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and

28   an opportunity to amend the complaint before dismissal.  *Lopez v. Smith*, 203 F.3d 1122, 1127-28

3

1   (9th Cir. 2000); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).  However, although the

2   court must construe the pleadings of a pro se litigant liberally, *Bretz v. Kelman*, 773 F.2d 1026,

3   1027 n. 1 (9th Cir. 1985), that liberal interpretation may not supply essential elements of a claim

4   that are not plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of*

5   *Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Furthermore, "[t]he court is not required to

6   accept legal conclusions cast in the form of factual allegations if those conclusions cannot

7   reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752,

8   754-55 (9th Cir. 1994).  Neither need the court accept unreasonable inferences, or unwarranted

9   deductions of fact.  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

10         In deciding a Rule 12(b)(6) motion to dismiss, the court may consider facts established by

11   exhibits attached to the complaint.  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th

12   Cir.1987).  The court may also consider facts which may be judicially noticed, *Mullis v. U.S.*

13   *Bankr.Ct.*, 828 F.2d at 1338, and matters of public record, including pleadings, orders, and other

14   papers filed with the court.  *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th

15   Cir.1986).

16         B.      Plaintiffs' Claims

17                 1.      Breach of Statutory Duties

18         Plaintiffs label their first cause of action "Professional Negligence and Breach of Statutory

19   Duties."[3]  They allege that defendants, by conducting an unnoticed sale of the subject property,

20   violated California Civil Code section 2924f, 2924g(c)(2), 2924h(g).  ECF No. 33 at 6, 8, 10.[4]

21   While plaintiffs' first cause of action purports to allege claim for violations of various statutes,

22   plaintiffs only allege that defendants violated California Civil Code § 2924h(g).  ECF No. 33.

23   Plaintiffs' allegations for violation of sections 2924f and 2924g(c)(2) are contained in other

24   section of the first amended complaint.  *Id*. at 8, 10.

25   _____

26         [3] This claim does not appear to actually allege a negligence claim.  If it did, it would be
    redundant to count two, which does purport to assert a claim for negligence.

27
         [4] Page numbers cited herein refer to those assigned by the court's electronic docketing
28   system and not those assigned by the parties.

4

1    Defendant Freddie Mac argues that plaintiffs have failed to allege sufficient facts to rebut

2    California's presumption that the foreclosure was properly conducted, and therefore their claim

3    fails.  ECF No. 37 at 5-9.  Defendant Quality argues that plaintiffs' claim must be dismissed

4    because (1) its status as a trustee prohibits the imposition of liability, and (2) plaintiffs have failed

5    to show that the foreclosure sale was improperly conduct.  ECF No. 42-1.

6    One California Appellate Court has summarized California's non-judicial foreclosure

7    proceedings as follows:

8       Upon default by the trustor, the beneficiary may declare a default
        and proceed with a nonjudicial foreclosure sale (Cal. Civ. Code §
9       2924).  The foreclosure process is commenced by the recording of a
        Notice of Default and Election to Sell by the trustee (Cal. Civ. Code
10      § 2924).  After the notice of default is recorded, the trustee must
        wait three calendar months before proceeding with the sale (Cal.
11      Civ. Code § 2924(b)).  After the 3-month period has elapsed, a
        notice of sale must be published, posted and mailed 20 days before
12      the sale and recorded 14 days before the sale (Cal. Civ. Code §
        2924f).  The trustee may postpone the sale at any time before the
13      sale is completed (Cal. Civ. Code § 2924g(c)(1)).  If the sale is
        postponed, the requisite notices must be given (Cal. Civ. Code §
14      2924g(d)).  The conduct of the sale, including postponements, is
        governed by Civil Code section 2924g.  The property must be sold
15      at public auction to the highest bidder (Cal. Civ. Code § 2924g(a)).

16   *Moeller v. Lien*, 25 Cal.App.4th 822, 890 (2d Dist. 1994)

17   California Civil Code section 2924g(c)(1) provides that "[t]here may be a postponement

18   or postponements of the sale proceedings . . . at any time prior to the completion of the sale for

19   any time not to exceed a total of 365 days from the date set forth in the notice of sale."  "The

20   notice of each postponement and the reason therefor shall be given by public declaration by the

21   trustee at the time and place last appointed for sale."  Cal. Civ. Code § 2924g(d).  In the event that

22   the sale proceedings are continued for more than 365 days, a new notice of sale must be published

23   in accordance with section 2924f.  Cal. Civ. Code § 2924g(c)(2).  California Civil Code § 2924f

24   requires notice be provided by recording, posting, publishing, and mailing the notice of sale.

25   "As a general rule, there is a common law rebuttable presumption that a foreclosure sale

26   has been conducted regularly and fairly."  *Royal Thrift and Loan Co. v. County Escrow, Inc.*, 123

27   Cal.App.4th 24, 32 (2nd Dist. 2004) (internal quotations omitted).  "Aside from the common law

28   presumption of validity . . ., Civil Code section 2924 contains a statutory presumption 'aris[ing]

1    from the recital in the trustee's deed that all statutory requirements for notice of default and sale

2    have been satisfied.  This presumption is prima facie evidence of compliance and conclusive

3    evidence of compliance in favor of a bona fide purchaser or encumbrancer.' [Citations.]  Thus,

4    once a deed reciting that all legal requirements have been satisfied has been transferred to a buyer

5    at a foreclosure sale, the sale can be successfully attacked on the grounds of procedural

6    irregularity only if the buyer is not a bona fide purchaser.  [Citations.]" *6 Angels, Inc. v. Stuart–*

7    *Wright Mortgage, Inc.*, 85 Cal.App.4th 1274, 1286 (2nd Dist. 2001).

8            Plaintiffs' first amended complaint rests mostly on conclusory allegations, and it is

9    therefore difficult to decipher exactly why plaintiffs believe defendants failed to comply with

10   California's comprehensive framework for conducting non-judicial foreclosure sales.  For

11   instance, although plaintiffs allege that three different Notices of Trustee Sale were recorded, they

12   claim that defendants failed to perform their ministerial duties, including failing to provide

13   plaintiffs with "the Notice of Trustee Sale."  It is not clear whether "the" Notice of Trustee Sale

14   references only one of the three notices, or whether plaintiffs contend they did not receive any of

15   the notices.  Further, after describing the various documents that were recorded, including the

16   three Notices of Trustee Sale and Trustee's Deed Upon Sale, *id.* ¶¶ 15-23, plaintiffs allege that

17   "[n]o other notice required by Cal. Civil Code § 2924f were [sic] given . . . ." *Id.* ¶ 26.  It is

18   unclear, however, what additional notice plaintiffs believe defendants were required to provide.

19          While the complaint is unclear, plaintiffs attempt to clarify their position in their

20   oppositions to defendants' motions.  Plaintiffs explain that their "First Amended Complaint

21   (FAC) is based primarily on the fact that the January 19, 2012 Trustee Sale did not comply with

22   the notice requirements of California Code of Civil Procedure §2924f [sic]."). ECF No. 45 at 1.

23   Plaintiffs also concede "that a notice of default (dated Dec. 11, 2008) and the NOTS for Mar. 13,

24   20009 [sic], April 5, 2010, and January 21, 2011, were sent to" their last known address." ECF

25   No. 47.[5]  Plaintiffs contend, however, that the January 11, 2011 Notice of Trustee's Sale, which

26

27   ───────────
        [5]  In its motion to dismiss, Quality argues that under California Civil Code § 2924b, it was
        only required to mail notices to plaintiffs' last known address. ECF No. 42-1 at 13. Plaintiffs
        agree. ECF No. 47 (Quality "had no duty to search for Plaintiff's actual address, and that service
28      of [the] notices to Plaintiff's last known address satisfies the statutory notice requirements at

                                                        6

1    noticed the sale of the subject property for February 22, 2011, did not constitute adequate notice

2    for the January 19, 2012 sale.  ECF No. 47 at 2-5.  According to plaintiffs, because the original

3    Notice of Trustee Sale noticed the sale date for April 1, 2009, each and every postponement that

4    set the sale date more than 365 days after April 1, 2009, was required to comply with California

5    Civil Code § 2924f.

6        Plaintiffs' argument ignores the plain language of § 2942g.  *See Royal Foods Co., Inc. v*

7    *RJR Holdings, Inc.*, 525 F.3d 1102, 1106 (9th Cir. 2001) (courts are to look at "the text of the

8    statute to determine whether the language at issue has a plain and unambiguous meaning with

9    regard to the particular dispute in the case . . . . If from the plain meaning of the statute

10   congressional intent is clear, that is the end of the matter.") (internal quotations omitted).  There is

11   nothing in the text of § 2924g to suggest that once the original sale date has been postponed for

12   more than 365 days, all subsequent postponement must be completed by recording a notice of

13   trustee sale.  To the contrary, the text of the statute provides that the sale proceedings may be

14   postponed "at any time prior to completion of the sale for any period of time not to exceed a total

15   of 365 days from the date *set forth in the notice of sale*."  Cal. Civ. Code § 2924g(c)(1).  There is

16   no mention of an original sale date.  Where the sale is postponed for more than 365 days, the

17   "sale proceedings shall be preceded by giving *a new notice* of sale in the manner prescribed in

18   Section 2924f.  Cal. Civ. Code § 2924g(c)(2) (emphasis added).

19       Thus, once a new notice of sale is given in the manner prescribed by section 2924f,

20   pursuant to § 2924g(c)(1) the sale may be postponed for any period not to exceed 365 days.  In

21   the event the sale is postponed for more than "365 days from the date set forth in the notice of

22   sale," Cal. Civ. Code § 2924g(c)(1), the "sale proceedings shall be preceded by giving a new

23   notice of sale in the manner prescribed in section 2924f."

24   /////

25   issue.").  *See California Livestock Production Credit Assn. v. Sutfin.*, 165 Cal.App.3d 136, 142
26   (3rd. Dist. 1985) (finding that California Civil Code section 2924-2924h do not require actual
     receipt "of a notice of default or notice of sale.  They simply mandate certain procedural
27   requirements reasonably calculated to inform those who may be affected by a foreclosure sale and
     who have requested notice in the statutory manner that a default has occurred and a foreclosure
28   sale is imminent.").

Here, the Notice of Default was recorded on December 11, 2008, in the Placer County Recorder's Office.  ECF No. 33 ¶ 15.  On March 13, 2009, Quality recorded the first Notice of Trustee's Sale, which noticed the sale for April 1, 2009.  *Id*. ¶ 17.  Pursuant to section 2924g(c)(1), defendants could postpone the sale proceedings without written notice so long as the sale was completed within 365 days of April 1, 2009, the date set forth in the first Notice of Trustee's Sale.  The sale did not occur within 365 days of the date set forth in that notice.  Accordingly, a second Notice of Trustee's sale was recorded on April 5, 2010, which noticed the sale for April 28, 2010.  *Id*. ¶ 19.  However, no sale was completed within 365 days of the noticed sale date, and therefore any further postponement was required to comply with § 2924f.  On January 11, 2011, defendants recorded a third Notice of Trustee's Sale, which noticed the sale for February 22, 2011.  ECF No. 33 ¶ 20.  Again, pursuant to section 2924g(c)(1), defendants could postpone the sale proceedings without providing written notice, so long as they did not seek to postpone the sale date more than 365 days from February 22, 2011, the date set forth in the third Notice of Trustee's Sale.  On January 19, 2012, the property was sold at a Trustee's Sale.  *Id*. ¶¶ 22, 23.  Defendants were not required to record a new Notice of Sale pursuant to section 2924f because the January 19, 2012 sale date was within 365 days from February 22, 2011, the date set forth in the third notice of sale.  *See* Cal. Civ. Code § 2924g(c)(1).  Accordingly, plaintiffs' allegations that defendants held an unnoticed trustee sale because they postponed the February 22, 2011 sale date without providing notice in compliance with 2924f is without merit.

Plaintiffs also allege that defendants violated California Civil Code § 2924h(g).  ECF No. 33, ¶ 34.  That section provides in relevant part that "It shall be unlawful for any person, acting alone or in concert with others . . . (2) to fix or restrain bidding in any manner, at a sale of property conducted pursuant to a power of sale in a deed of trust of mortgage."  Cal. Civ. Code § 2924h(g).  Plaintiffs' contention that defendants violated this section is based on their allegation that defendants sold the subject property at an unnoticed trustee sale.  ECF No. 33 at 6.  As just explained, plaintiffs have failed to show that defendants failed to comply with the notice and postponement requirements.  Accordingly, plaintiffs have failed to allege a claim for violation of California Civil Code § 2924h(g).

1        Lastly, plaintiffs claim that the foreclosure of the subject property was improper because

2    in July 2009, defendant Freddie Mac allegedly "entered into a Trial Loan Modification on the

3    Deed of Trust, rendering the underlying Notice of Default ineffective."  ECF No. 33 ¶ 18.

4    Plaintiffs rely on two cases to support their conclusion that a Trial Loan Modification renders a

5    previously recorded Notice of Default ineffective.  First, plaintiffs cite to *West v. JPMorgan*

6    *Chase Bank, N.A.*, 214 Cal.App.4th 780 (4th Dist. 2013).  In that case, the plaintiff alleged,

7    among other things, that the defendant bank breached a Trial Plan Agreement by denying the

8    plaintiff a permanent loan modification.  *Id*. at 796.  The court found that the Trial Plan

9    Agreement, which was a trial loan modification under the Home Affordable Mortgage Program

10   ("HAMP"), was a valid enforceable contract.  *Id*. at 796.  The court held that under HAMP, "if

11   the lender approves a [Trial Plan Agreement], and the borrower complies with all the terms of the

12   [Trial Plan Agreement] and all of the borrower's representations remain true and correct, the

13   lender *must offer* a permanent loan modification."  *Id*. (emphasis in original).  The court found

14   that because plaintiff alleges that she had complied with the terms of the Trial Loan Agreement,

15   but the defendant bank failed to offer her a permanent loan modification, the plaintiff sufficiently

16   alleged a breach of contract claim.  *Id*. at 799.

17       Plaintiffs also rely on *Menan v. U.S. Bank Nat. Ass'n*, 924 F. Supp. 2d 1151 (E.D. Cal.

18   2013).  There, the plaintiff alleged that it had reached a Forbearance Agreement with the

19   defendant bank.  *Id*. at 1154.  Under the agreement, the plaintiff was required to make certain

20   payments, and in exchange the defendant agreed to cancel the notice of default.  *Id*. at 1154-1157.

21   The court found that plaintiff stated a claim for breach of the Forbearance Agreement based on

22   plaintiff's allegations that he made all the requisite payments, but defendant failed to cancel the

23   notice of default.  *Id*. at 1156-1158.

24       Neither case supports plaintiffs' position here that entering into a trial loan modification

25   renders any previously filed notice of default invalid.  Both cases involved a breach of contract

26   claim, a claim not asserted in plaintiffs' amended complaint.  Plaintiffs do not provide any

27   allegations concerning the terms of the loan medication, nor do they allege that the borrower

28   /////

1    complied with the terms of the Trial Loan Modification.  The complaint is also devoid of any

2    explanation as to why a permanent loan modification was never reached.

3          Furthermore, even if plaintiffs had alleged that Freddie Mac agreed to cancel the notice of

4    default based on compliance with the Trial Loan Modification, it appears that plaintiffs would

5    lack standing to assert a claim based on the alleged breach of the Trial Loan Modification

6    agreement.  Under California law, "[a] third party beneficiary may enforce a contract made for its

7    benefit."  *Hess v. Ford Motor Co.*, 27 Cal.4th 516, 524 (2002).  However, "[a] third party should

8    not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a

9    contracting party; his right to performance is predicated on the contracting parties' intent to

10   benefit him . . . ."  *Jones v. Aetna Casualty & Surety Co.*, 26 Cal.App.4th 1717, 1724 (1st Dist.

11   1994).  "The circumstance that a literal contract interpretation would result in a benefit to the

12   third party is not enough to entitle that party to demand enforcement.  The contracting parties

13   must have intended to confer a benefit on the third party."  *Neverkovec v. Fredericks*, 74

14   Cal.App.4th 337, 348–49 (1st Dist. 1999).  When interpreting a written contract, if possible a

15   court is to ascertain the intentions of the parties from the writing alone. Cal. Civ. Code § 1639.

16   Plaintiffs do not allege any facts demonstrating that the parties to the Trial Loan Modification

17   intended to confer a benefit on plaintiffs.  Indeed, such a scenario would be unlikely.

18         The amended complaint fails to allege that the foreclosure sale was improperly conducted.

19   Accordingly, plaintiffs' first claim for relief must be dismissed.

20         2.    Remaining Claims

21         The amended complaint also purports to assert state law claims for negligence, intentional

22   interference with  a contract, intentional interference with an economic advantage, violation of

23   California Business and Professions Code § 17200, and financial elder abuse.  ECF No. 33 at 7-

24   12.  However, each of these claims rests on plaintiffs' contention that defendants held an

25   unnoticed trustee's sale in violation of 2924f and 2924g.  *See id.* ¶¶ 42-48 (alleging that Freddie

26   Mac breached its duty of care owed to plaintiffs by conducting the January 19 sale without

27   lawfully required notice); ¶ 54 ("At the time the DEFENDANTS sold the subject property at the

28   above indicated unnoticed, unauthorized Trustee Sale, DEFENDANTS intended to disrupt the

10

1  performance of the contract between PLAINTIFFS and Sofia Campos-Riedel."); ¶ 62

2  ("DEFENDANTS' acts were wrongful and disruptive because PLAINTIFFS' security interest in

3  the subject property was extinguished by an unauthorized foreclosure against real property at an

4  unnoticed Trustee Sale."); ¶¶ 67-68 (alleging defendant violated California Business and

5  Professions Code § 17200 by failing to comply with section 2924f in support of claim for); ¶¶ 77-

6  80 (alleging that the "above-described conduct" amounted to elder abuse).

7       As plaintiffs have failed to allege that the foreclosure sale was improperly conducted,

8  these remaining claims necessarily fail.

9       3.   Leave to Amend

10      Plaintiffs' oppositions to defendants' motions to dismiss make clear that the instant

11  dispute concerns whether defendants' complied with the notice requirements set forth in

12  California Civil Code section 2924f.  ECF Nos. 45-48.  As explained above, plaintiffs' position is

13  based on a misreading of sections 2924f and 2924g.  While the court would normally provide pro

14  se plaintiffs leave to amend, in this case plaintiffs would not be able to cure the deficiencies

15  identified above through in an amended complaint.  Accordingly, it is recommended that the first

16  amended complaint be dismissed without leave to amend.  *Noll v. Carlson*, 809 F.2d 1446, 1448

17  (9th Cir. 1987) (While the court ordinarily would permit a pro se plaintiff to amend, leave to

18  amend should not be granted where amendment would be futile).

19  **III.   Conclusion**

20      Accordingly, it is hereby RECOMMENDED that:

21      1.  Defendants' motions to dismiss, ECF No. 36, 42, be granted;

22      2.  Plaintiffs' first amended complaint, ECF No. 33, be dismissed without leave to amend;

23         and

24      3.  The Clerk be directed to close the case.

25      These findings and recommendations are submitted to the United States District Judge

26  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

27  after being served with these findings and recommendations, any party may file written

28  objections with the court and serve a copy on all parties.  Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

2  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

3  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

4  DATED:  October 16, 2014.

5

6                     EDMUND F. BRENNAN
                      UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                  12